Todd F. Anderson (#12432)
Jessica L. Anderson (#13132)
Anderson Law Center, P.C.
PO Box 183
54 South 300 East
Delta, UT 84624
Telephone: 435-864-4357
Facsimile: 435-864-4358
todd@deltaattorney.com
jessica@deltaattorney.com

*Attorneys for the Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT, CENTRAL DIVISION, STATE OF UTAH**

| | |
|---|---|
| ANDERSON LAW CENTER, P.C., and TYLE PETERSON and CALLIE PETERSON,<br><br>    Plaintiffs,<br><br>v.<br><br>BAC HOME LOANS SERVICING, L.P. a/k/a Bank of America, RECONTRUST COMPANY, N.A.,<br><br>    Defendants. | **FIRST AMENDED COMPLAINT**<br><br>Court Case No.: 2:10-cv-01107-CW<br>Judge Bruce S. Jenkins<br><br>JURY DEMANDED |

Pursuant to Rule 15(b) of the Federal Rules of Civil Procedure and with written consent of opposing parties, Plaintiffs, by and through counsel Todd Anderson, hereby file this First Amended Complaint and state:

## I. PARTIES, SERVICE, JURISDICTION, AND VENUE

1. The Original Complaint was filed on October 27, 2010 in the Fourth Judicial District Court for Millard County, State of Utah, Case No. 100700194, before the Honorable James Brady.

2. Defendants removed the action to this court on November 8, 2010.

3. Plaintiff, Anderson Law Center, P.C. ("Anderson Law Center") is a Utah professional corporation with its principal place of business in Delta, Utah, in the county of Millard, State of Utah.

4. Plaintiffs Tyle and Callie Peterson (collectively the "Petersons") are husband and wife who are citizens of the State of Utah and reside in Millard County.

5. Defendant BAC Home Loans Servicing, L.P. ("BofA") is a Texas limited partnership, and no limited or general partner is a citizen of the State of Utah.

6. Defendant ReconTrust Company N.A. ("ReconTrust") is a national association with its main office in California, and is therefore a citizen, for purposes of diversity jurisdiction, of California.

7. Based upon information and belief, ReconTrust is a wholly owned subsidiary of BofA.

8. This action is based largely upon a parcel of real property that is situated in Millard County and is commonly known as 4080 West 2000 South, Hinckley, UT 84635.

9. At the time this Complaint was originally filed, the amount at issue exceeded $75,000 as Plaintiffs alleged Defendants were in possession of over $84,000 of money delivered by

Plaintiffs to Defendants. Plaintiffs seek further damages against Defendants for alleged fraud, slander of title, breach of contract, breach of fiduciary duty and other causes of action.

10. The United States District Court for the District of Utah has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, because Plaintiffs and Defendants are each completely diverse, and the amount in controversy exceeds $75,000.

## II. RESPONDEAT SUPERIOR

11. Whenever in this Complaint it is alleged that Defendants did, or failed to do, any act, thing and/or omission, it is meant that Defendants by itself or its agents, officers, servants, employees, vice principals, or representatives either did or failed to so such act, thing and/or omission, and it was done with the full authorization or ratification of Defendants, and/or done in the normal routine, course and scope of the agency or employment of Defendants or its agents, officers, servants, employees, vice principals, or representatives and/or with actual and/or apparent authority of Defendants.

## III. FACTUAL ALLEGATIONS

12. As of October 26, 2010 and for several years prior, Plaintiffs Tyle and Callie Peterson were and are titled owners of property located at 4080 West 2000 South, Hinckley, UT 84635 (hereinafter referred to as the "Property").

13. Plaintiffs Peterson belief that they granted to BofA, as creditor to a loan which the Petersons were debtors, a mortgage or trust deed and believe the current loan number

associated with such security interest as assigned by BofA is 140491867-2 (hereinafter "BofA Loan").

14. The Property is developed with among other things, a single family dwelling. In December of 2009, the Petersons suffered a ruptured water pipe due to water freezing inside the dwelling. The Petersons were out of town for several days after the pipe burst and the water damage to the home was catastrophic.

15. The Petersons had maintained an insurance policy on the home and Property through American National Property and Casualty Company (ANPAC). Claims made on the policy for the damages to the home were initially denied by ANPAC.

16. In January of 2010, the Petersons retained attorney Todd Anderson of Anderson Law Center to assist them in pursuing their claim against ANPAC for the damage to the home.

17. Due to financial difficulty and other reasons not relevant to this action, the Petersons failed to make monthly payments as they came due on the BofA loan beginning in January of 2010.

18. In June 2010, the Petersons received Notice of Default and Election to Sell the Property from ReconTrust Company, acting as an agent of BAC.

19. On June 18, 2010, Todd Anderson with Anderson Law Center notified Bank of America of the destroyed property and his belief that a pending insurance settlement with ANPAC would result in sufficient funds to satisfy the loan in full.

20. At that same time, Todd Anderson had collected approximately $51,949.71 from ANPAC and in the same communication to BofA offered those funds in an effort to reach a mutually beneficial delay of the foreclosure proceedings and gain both the Petersons and BofA the benefits that would result from completing negotiations with ANPAC on the property damage claim. Following settlement, BofA's loan would have been paid in full, and the Petersons would have the Property free of BofA's encumbrance. (*See* Exhibit A; Letter from Todd Anderson to BofA apprising them of pending insurance settlement and proposed offer of compromise).

21. At the time BofA was offered a payment of $51,949.71, the payoff of the BofA Loan was approximately $63,169.35. BofA did not reply to this request and presumably continued with its efforts to foreclose the Property.

22. After several months and much negotiation, ANPAC and the Petersons settled the property damage claim and on August 13, 2010, a Friday, Todd Anderson of Anderson Law Center was in possession of bank drafts that totaled $84,026.16. (See Exhibit B; check stubs of the check

23. Due to BofA's interest in the insured Property and an attorney lien claimed on the insurance proceeds, the drafts were payable to Tyle and Callie Peterson and Bank of America and Todd Anderson.

24. In August, 2010 and after it was clear that a settlement had been reached with ANPAC, Todd Anderson contacted BofA's property claims department and offered to act with a

Limited Power of Attorney from BofA to deposit the funds into Anderson Law Center's trust account and then submit a check from that account to satisfy the BofA Loan.

25. BofA refused this proposed procedure and instead insisted that the Petersons and Anderson Law Center endorse the insurance checks and send them to BofA to be held by BofA.

26. It was explained to Todd Anderson that after receipt of the funds BofA would either pay contractor invoices produced for repairing the property, or, upon request from the Petersons, pay the balance of the BofA Loan and return excess funds as instructed. It was further explained to Todd Anderson that such processing to pay off the loan and return the excess funds would take 10 to 14 business days, and that the payoff of the BofA Loan would be back dated to the date the funds were received.

27. On or about August 16, 2010, the Monday following Anderson's receipt of the insurance checks of the previous Friday, the checks, properly endorsed by the Petersons and Anderson, were mailed next day priority mail to BofA's property claims department as instructed, along with a letter from and signed by the Petersons clearly referencing the BofA Loan and instructing that the funds be used to satisfy the BofA Loan in full and that the excess funds be returned to the Petersons' legal counsel Todd Anderson. Also enclosed in the mailing was a letter from and signed by Todd Anderson reiterating the Petersons' instructions regarding the handling of the funds and clearly giving notice of

lien claimed in the funds for payment of attorney fees. (*See* Exhibit C and D; Printouts of the original letters that are believed to currently be in the possession of Defendant.)

28. The insurance checks totaling $84,026.16, the Petersons' letter containing instructions for their handling, and Todd Anderson's letter giving BofA notice of Anderson Law Center's attorney lien were received by BofA on August 18, 2010. (*See* Exhibit E; USPS Return Receipt).

29. The loan payoff amount as of August 16, 2010 was $64,920.40. (*See* Exhibit F; Pay off Demand Statement produced by BofA valid through August 16, 2010).

30. As of October 26, 2010, despite being in possession of over $84,000 of the Petersons' insurance money and clear instructions for the handling of that money, BofA representatives assert to Anderson Law Center that the Loan has not been paid off.

31. Starting in September, 2010, representatives of Anderson Law Center have made numerous telephone calls to BofA's property claims and foreclosure divisions to check the status of the payoff procedure, the excess proceeds, and generally and to request updates regarding BofA actions.

32. Starting in September of 2010, Anderson Law Center has made verbal and written demand on BofA that the loan be paid off and the excess funds be returned.

33. On October 1, 2010, over seven weeks after the insurance checks were received by BofA, BofA continued taking decisive and affirmative steps towards foreclosure of the property including having the Petersons personally served a Notice of Trustee's Sale providing

notice that the property would be sold on November 4, 2010 at 1:00 PM at the main entrance of the Millard County Court House. (*See* Exhibit G; Notice of Trustee sale showing date of service by Millard County Sheriff's Office.)

34. The notice contained a signature block with a line for "Pam Davis, Team Member" of ReconTrust Company, N.A. The block also contained an address and telephone number, with extension, leading a reasonable reader to assume that the contact information was for the alleged signatory Pam Davis.

35. However, the Notice was unsigned in any way with no handwritten marks on the line designated for a signature.

36. Todd Anderson tried to contact Ms. Pam Davis using the telephone number and extension designated on the notice. During many of his efforts to be transferred to the extension number listed, no. 3436, his requests were repeatedly refused by representatives who answered, he was hung up on, or his call was otherwise disconnected. Todd Anderson was ultimately informed by a representative that answered at the 800-281-8219 number listed on the notice that the number was for ReconTrust, but there was no record of a Pam Davis working for the company and that the extension did not reach an actual telephone or individual.

37. As of October 26, 2010, over 10 weeks after BofA's receipt of the insurance funds, the property remains listed to be sold on a website located at: http://www.recontrustco.com/upcoming_result_details.aspx?county=Millard which is

presumably maintained by Defendant ReconTrust. (*See* Exhibit H; Print out of the website listing the property for sale).

38. The Notice of Trustee's Sale has been publicized in the Deseret News newspaper for multiple weeks during the month of October.

39. BofA continues to add fees, costs, and interest to the BofA Loan. As of October 18, 2010 the balance of the loan was $66,687.35. (*See* Exhibit I; Payoff Demand Statement valid through October, 18, 2010).

40. All efforts to resolve this matter short of legal action and court assistance have failed. Written demands have gone unanswered and all telephonic efforts to reach an individual with authority from the Defendants to resolve the matter have been unsuccessful.

41. Plaintiffs believe the mishandling of their insurance funds and the continued foreclosure efforts despite BofA's possession of the Petersons' funds is either intentional or, in the alternative, grossly negligent.

## IV. BREACH OF CONTRACT

42. Plaintiffs adopt the foregoing paragraphs one (1) through forty-one (41) fully herein as if repeated verbatim with respect to this cause of action of Breach of Contract. For the purpose of this Cause of Action, and no other purpose, the Petersons assume that BofA owns a relevant promissory note and related contracts including a security interest in the Property (collectively still referred to as the "BofA Loan"). The Petersons reserve the right to demand proof of these facts if Defendants attempt to enforce the same.

43. The Petersons and Defendant BofA purportedly have a valid, enforceable contract.

44. The Petersons are presumably a proper party to sue for breach of the contract as a party to the contract.

45. The Petersons have provided to BofA funds greater than any calculable amount owing on the BofA Loan in the form of the insurance proceeds.

46. BofA accepted the insurance proceeds without objection.

47. BofA breached the contact by continuing foreclosure proceedings even after accepting funds sufficient to pay any calculable balance of the BofA Loan.

48. BofA breached the contract by not properly executing and filing a release of lien to the Property with the Millard County Recorder's office.

49. BofA breached the contract by misappropriating, misapplying, or otherwise mishandling the insurance funds, as a payment to the BofA Loan, in a reasonable manner or in good faith.

50. BofA breached the contract by failing to provide requested information to the Petersons, or their agent and legal counsel, Anderson Law Center, and by failing to comply with its duty of good faith and fair dealing, in violation of the Fair Debt Collection and Practices Act.

51. BofA's breach of contract has caused the Petersons injury.

### V. FRAUD - FRAUDULENT MISREPRESENTATION

52. Pleading in the alternative, Plaintiffs adopt the foregoing paragraphs one (1) through fifty-one (51) fully herein as if repeated verbatim with respect to the cause of action of Fraud-Fraudulent Misrepresentation.

53. BofA represented to the Plaintiffs that their interests in the insurance proceeds would be safeguarded and protected. That the checks would be fully endorsed by BofA for deposit into a secure trust or escrow-type account. That upon proper instruction from the Petersons, the debtor of the BofA loan, the funds would be handled in an exact manner being payoff of the BofA Loan and return of the excess.

54. The statements and assurances made by BofA were material in the Plaintiffs' decision to endorse the checks and send them to BofA.

55. Statements made by BofA regarding how the funds would be handled and the actions it would take upon receipt of the funds and instructions were apparently false as it has failed in nearly all regards to act on those assertions.

56. When BofA made the representations, BofA knew the representations were false, and/or BofA made the representations recklessly, as a positive assertion, and without knowledge of their truth.

57. Plaintiffs' relied on the assertions made by BofA in making their decision to endorse the insurance checks and send them to BofA.

58. The assertions caused the Plaintiffs injury.

## VI. WRONGFUL FORECLOSURE

59. Pleading in the alternative, Plaintiffs adopt the foregoing paragraphs one (1) through fifty-eight (58) fully herein as if repeated verbatim with respect to the cause of action of Wrongful Foreclosure.

60. Despite having in its possession an amount of the Petersons' money sufficient to pay off any calculable balance of the BofA Loan, BofA has instructed Defendant ReconTrust to continue foreclosure efforts of the Property.

61. Despite being notified that BofA has been supplied funds sufficient to satisfy the BofA Loan, ReconTrust has continued its foreclosure efforts of the Property.

62. Foreclosure documents filed with the Millard County Recorder's Office and served upon the Petersons were deficient and in violation of Utah Law.

63. Upon current information or belief of the Plaintiffs, Defendant ReconTrust is not properly registered or licensed with the state of Utah or properly positioned with sufficient contacts within the State of Utah to collect debts, serve as a trustee for a deed of trust, or conduct business in Utah.

64. As a proximate result of the intentional, negligent, or reckless conduct of the Defendants, the Petersons are threatened with the eminent loss of their property.

65. Unless enjoined, the Petersons will suffer irreparable harm and will not have an adequate remedy at law.

66. As a proximate result of the Defendants' actions, the Petersons have suffered, and will continue to suffer injury.

## VII.   SLANDER OF TITLE

67. Pleading in the alternative, Plaintiffs adopt the foregoing paragraphs one (1) through sixty-six (66) fully herein as if repeated verbatim with respect to the cause of action of Slander of Title.

68. The Defendants have caused to be recorded various documents at the Millard County Recorder's Office that have impaired the Petersons' title to the Property which constitutes slander of title.

69. The Plaintiffs have suffered injury because of such recordings.

## VIII.   BREACH OF FIDUCIARY DUTY

70. Pleading in the alternative, Plaintiffs adopt the foregoing paragraphs one (1) through sixty-nine (69) fully herein as if repeated verbatim with respect to the cause of action of Breach of Fiduciary Duty.

71. Upon receipt of the Petersons' ANPAC insurance funds, a trust relationship, whether express, implied, or one created by operation of law in the form of a constructive trust was created, with BofA owing a fiduciary duty to those parties who had an interest in the funds.

72. BofA was given express notice that all the Plaintiffs claimed an interest in at least part of the funds it was entrusted. Such notice was given by the parties being named payee on the drafts and with the letters that accompanied the checks when they were supplied to BofA.

73. Accordingly BofA owed a fiduciary duty to the Plaintiffs.

74. BofA breached that fiduciary duty by: failing to handle the funds in a reasonable manner, failing to following instructions of the Petersons who were the rightful owners of the funds, failing to safeguard the funds, failing to protect the lien claimant Anderson Law Center, failing to deliver funds to which BofA had no legal claim.

75. As a result of BofA's breach of its fiduciary duty, the Plaintiffs have suffered injury.

## IX.     UNJUST ENRICHMENT

76. Pleading in the alternative, Plaintiffs adopt the foregoing paragraphs one (1) through seventy-five (75) fully herein as if repeated verbatim with respect to the cause of action of Unjust Enrichment.

77. BofA has now been in possession of the insurance funds for over 10 weeks. During that time BofA has enjoyed the time value of those funds including the interest the funds are drawing while residing in a bank account and Defendant's ability to loan the funds and collect interests and fees from such service.

78. BofA's enrichment is at the direct expense of the Plaintiffs' as they should be the ones enjoy those benefits of the funds. Accordingly, BofA's enrichment is unjust.

79. Plaintiffs have suffered injury as a result of BofA's unjust enrichment at their expense.

## X.     INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

80. Pleading in the alternative, Plaintiffs adopt the foregoing paragraphs one (1) through seventy-nine (79) fully herein as if repeated verbatim with respect to the cause of action of Intentional Infliction of Emotional Distress.

81. Defendants intentionally engaged in the foreclosure of the Petersons' property for more than 10 weeks after the BofA Loan had been satisfied.

82. Defendants engaged in the foreclosure of the Petersons' property either with the purpose of inflicting emotional distress, or, or did use such conduct that any reasonable person would have known that such emotional distress would result.

83. Defendants' actions of continued foreclosure efforts despite having been paid the entire balance of the loan and repeated efforts to notify both Defendants of its mistakes have been of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.

84. As a proximate result of Defendants' actions, Plaintiffs have suffered extreme mental and emotional distress and reputational damage.

## XI. CONVERSION

85. Pleading in the alternative, Plaintiffs adopt the foregoing paragraphs one (1) through eighty-four (84) fully herein as if repeated verbatim with respect to the cause of action of Conversion.

86. Defendants did convert Plaintiffs' personal property by willfully interfering with approximately $18,000 of the Plaintiffs' funds.

87. Defendants did so without lawful justification, and to the exclusion of the Plaintiffs' rights, use and possession.

88. Plaintiffs have been damaged as a result of Defendants' conversion of their property.

### XII. VIOLATION OF TRUST AND/OR BREACH OF TRUST

89. Pleading in the alternative, Plaintiffs adopt the foregoing paragraphs one (1) through eighty-eight (88) fully herein as if repeated verbatim with respect to the cause of action of Violation of Trust and/or Breach of Trust.

90. An actual or constructive trust was created when Plaintiffs signed over checks to Defendants, totaling $84,026.14 for a debt of approximately $65,000.

91. That trust was violated and breached when Defendants did not pay off the loan, stop foreclosing on the property or return the excess funds until after this action was filed.

92. Plaintiffs have been damaged as a result of Defendants' violation and breach of trust.

### XIII. VIOLATIONS OF THE "FAIR DEBT COLLECTIONS PRACTICES ACT", 15 U.S.C. § 1692, et seq.

93. Pleading in the alternative, Plaintiffs adopt the foregoing paragraphs one (1) through ninety-two (92) fully herein as if repeated verbatim with respect to the cause of action of Violations of the Fair Debt Collections Practices Act.

94. Defendants publishing credit information which it know or should have known to be false.

95. Defendants took or threatened to take nonjudicial action to foreclose on property that it had no present right to possess as collateral through an enforceable security interest.

96. Plaintiffs have been harmed by Defendants' actions.

### XIV. REQUEST FOR DECLARATORY JUDGMENT

97. Pleading in the alternative, Plaintiffs adopt the foregoing paragraphs one (1) through ninety-six (96) fully herein as if repeated verbatim with respect to the cause of action of Request of Declaratory Judgment.

98. Upon information or belief, Defendants are not the receiver of an assignment of the promissory note at issue herein and therefore Defendants were not entitled to any payments, nor were Plaintiffs obligated to pay any sum to Defendants.

99. Defendants are liable to Plaintiffs for any and all money paid it by Plaintiff under the guise that Defendant was entitled to collect on such an assignment of a promissory note.

100. Moreover, upon information or belief, Defendant is not the receiver of an assignment of a deed of trust associated with the above promissory note and, therefore, Defendant is not entitled to foreclose such deed of trust.

101. Pursuant to Utah Code 78B-6-401, Plaintiffs requests that this court make a declaration of the rights, status, and obligations of the parties under the contract(s). This request includes, but is not limited to: a declaration as to the total amount owed under the contract(s) herein, who the amount is owed to, and exactly when the amount owed is or

was due; legal rights and obligations of the parties under any deeds of trust discussed herein.

## XV.  DAMAGES

102. The Plaintiffs have suffered substantial damages as a direct and proximate result of the above said wrongful acts and/or omissions of the Defendants in excess of $75,000. The Petersons have suffered injury and damages including, but not limited to, loss of reputation, loss of self esteem, and severe mental anguish and emotional distress in the past and in the future. The Petersons have also suffered loss of credit reputation in the past and loss of credit reputation in the future as well as other damages. Anderson Law Center has lost the benefit of prompt payment for costs expended and fees earned. Both Plaintiffs have incurred costs and fees in their efforts to resolve this matter short of seeking the assistance of this court.

## XVI.  EXEMPLARY DAMAGES

103. The wrongful acts and/or omissions of the Defendants were committed intentionally, knowingly, maliciously, wantonly and willfully, and in conscious disregard of the well established rights of the Plaintiffs. The conduct of the Defendants was of such a nature that it gives rise to liability for exemplary damages under applicable law in that the harm it caused to the Plaintiffs resulted from fraud, malice and/or gross negligence. The Plaintiffs pray for exemplary damages in an amount determined to be appropriate by the jury in this case.

## XVII.  PRAYER

**WHEREFORE, Plaintiffs request that:**

104. Damages and punitive damages be assessed against Defendants for breach of contract, fraudulent misrepresentation, wrongful foreclosure, slander of title, breach of fiduciary duty, unjust enrichment, intentional infliction of emotional distress, conversion, violation of trust and/or breach of trust, and violations of the Fair Debt Collection Practices Act.

105. Plaintiffs recover costs of suit and attorney fees.

106. Plaintiffs be awarded other and further relief to which the Plaintiffs may be justly entitled.

## XVIII. DEMAND FOR JURY TRIAL

107. Plaintiffs demand a trial by jury on all claims and issues so triable.


DATED this   14   day of March, 2011.

Anderson Law Center, P.C.


　　　/s/ Todd F. Anderson　　　
Todd Anderson
Attorney for the Plaintiffs

I approve of and consent to filing of the above First Amended Complaint.

    /s/ Darren K. Nelson
Attorney for the Defendants (signature)

    3/14/2011
Date

## CERTIFICATE OF SERVICE

I hereby certify that on the 14 day of March, 2011, I electronically filed the foregoing First Amended Complaint with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following:

Darren K. Nelson
Michael D. Black
Parr Brown Gee &Loveless
185 South State Street, Suite 800
Salt Lake City, UT 84111

    /s/ Todd F. Anderson
    Todd F. Anderson
    Attorney for Plaintiffs